ADLER, (UNITED STATES v.)
[See United States v. Adler, Case No. 14,424.]

---

## Case No. 84.
### The ADMIRAL.
[18 Law Rep. (1856,) 91.]

District Court, D. Massachusetts.

COLLISION — ENFORCEMENT OF LIEN — LACHES — CHANGE OF OWNERSHIP — NOTICE TO CORPORATION.

1. A lien in admiralty continues until a reasonable opportunity is given to enforce it.

2. What is a reasonable time depends on the circumstances of each case.

3. When a collision occurred October 7th, 1852, and a libel in rem was filed after more than twenty months, during which time the libelants might have enforced their lien, if any, and after a change of ownership, the court refused to enforce the lien. Quaere, whether it should be enforced if the res had not changed owners: and if the delay had operated to the prejudice of the owners.
[Cited in The D. M. French, Case No. 3,938; The Artisan, Id. 567; The Bristol, 11 Fed. Rep. 163.]

4. The knowledge of stockholders in a corporation, the former owners of the corporate property, will not affect the corporation with notice of a lien when there are other stockholders who took stock in ignorance of the claim.
[Cited in Davis Improved Wrought Iron Wagon Wheel Co. v. Davis Wrought Iron Wagon Co., 20 Fed. Rep. 700.]

5. A notice to a stockholder or to a party who afterwards becomes an officer of the corporation is not notice to the corporation.

6. The fact that a party receiving the notice afterwards becomes an officer in the company will not make it obligatory on him to give that notice, before received, to the company.

[In admiralty. Libel in rem by the Merchants' Steam Navigation Company against the Admiral (the Eastern Steamboat Company, claimants) for damages sustained in a collision. Libel dismissed, with costs.]

C. P. Curtis, Jr., for libelants.
Henry C. Hutchins, for respondent.

SPRAGUE, District Judge, gave his opinion in this case, from which the facts sufficiently appear, in substance as follows:—

This is a libel filed by the Merchants' Steam Navigation Company—owners of the Steamer Eastern State—for damages sustained by that vessel, in a collision with the steamer Admiral. The collision occurred October 7th, 1852, and this libel was filed July 1st, 1854, a period of more than twenty months, during all of which time the Admiral was plying twice a week between this port and St. John, and there were agents of the Eastern State here. The libelants, therefore, have had a period of twenty months to assert their lien and have not done so. It may be that if third persons had not become interested in the Admiral this libel might be maintained, although I am not prepared to say that I should hold that the lien still remained upon the vessel if there had been no change of ownership. If the boat still remained the property of her former owners it would perhaps be a matter of no concern to them whether they were sued in personam or whether the boat was seized. If the delay operated to prejudice them in any way, I am not certain that the lien ought not to be held to have been lost. This case differs from the ordinary cases of liens. This is a lien for a tort. Generally liens are sought to be enforced for debts.

At common law liens are lost with the possession of the property. This is not so in admiralty. From the necessities of commerce these liens are upheld without reference to the possession—vessels are frequently away from their owners, and their masters without credit, and unless this extraordinary security was given great loss and inconvenience would often be sustained. These liens are secret. There is no place where inquiry may be made and their existence and extent be ascertained. The whole tendency of legislation has been that the world should know the incumbrances on property. Such was the object of the act of congress passed in 1850, requiring the registration of bills of sale and mortgages of vessels. Such is the policy of the law in reference to the title to real estate. The rule adopted in courts of admiralty, is to allow the continuance of the lien until a reasonable opportunity is given to enforce it. If a party neglects to avail himself of it, third persons are not to be prejudiced by his delay. What is a reasonable time is left by the law to be determined by the circumstances of each case. In case of a lien for repairs or materials furnished,

a proposed purchaser may, perhaps, by inquiry, ascertain the extent of the lien, but in case of a lien for collision, this is impossible. It may be doubtful whether there is any claim, and if there be any, the amount cannot be ascertained. If a party were allowed to lie by, for such a length of time, and afterwards assert his lien, it would deprive the owner of the opportunity of selling his vessel, or at least cast a shade upon the title, and thus injure the value. Another difficulty growing out of this delay, is the loss of evidence. It is well known that in cases of collision, there is a great deal of contradictory testimony, that of sailors and others, who are often difficult to be found at the end of so long a period. One party might secure this testimony, and the other could not. One might wait till the witnesses of the other were dispersed, and then file his libel. It is said that the transfer in this case is colorable. There is no evidence of it. The case must be decided upon the testimony before me. There is a bill of sale—an acknowledgment of the receipt of the consideration, and a delivery of the vessel, and the bill of sale was duly recorded. This makes a good title to the claimants. It is said all the former owners of the Admiral were stockholders in the claimants' company, and thus the corporation is affected with knowledge of this lien. It does not appear that they owned in the company in the same proportion as before, and if it did it would make no difference, because there were other stockholders in the company who took stock in ignorance of the claim, and they ought to be protected. The former owners became merely stockholders in the new company, and their knowledge does not affect the corporation with knowledge. The difficulty is, that as this is a process in rem, and the boat the property of the corporation, there is no process to reach the interests of the former owners without affecting the interests of others who purchased innocently.

The boat is now owned by a corporation and not by individuals. The persons owning do not own as before any part or right in the boat, but they own stock in the company. It is said by the libelants that they gave notice of the claim to the agent of the Admiral here. This notice, (though denied) if given, was given within three days after the collision. But the notice was only of a claim, and not whether the claim would be made in personam or in rem. But what is of more importance, it was given to the agent of the former owners, and not to the agent of the claimants. And the notice which is stated by a Mr. ——, of Bangor, is not satisfactory. How does he know the notice was given? He does not say he gave it, but that Mr. Clark, the attorney, gave it. He does not say how he knew this notice was given, and I do not consider this proper proof of notice. But if it were given, it was after the purchase of the boat, and then what

could the claimants do? They did all they could in sending the vessel within the jurisdiction, and thus gave the libelants an opportunity to assert their lien, and the libelants have not proceeded to assert their claim for all this time. I doubt if Nichols was the proper party to be notified. He was not the general agent of the corporation. If any notice could avail, it, at least, should have been given to some person who was authorized to receive and act upon it, or whose duty it was to communicate it to the corporation. A notice to a stockholder or to a party who afterwards becomes an officer of the corporation is not notice to the corporation, because the notice was not given to a party whose duty it was to notify the corporation. The fact, that a party receiving the notice afterwards becomes an officer in the company, will not make it obligatory upon him to give that notice before received to the company. It is said that another suit was pending between the former owners of the Admiral and the libelants, and that this was notice of the claim, but that libel and suit was between other parties. It is farther said that it was proper for the libelants to await the issue of that suit before filing this libel, and so avoid litigation. There was a matter of personal convenience to the libelants and for their own protection, and to save themselves expense, but a delay for such purpose must not be allowed to work an injury to others. For these reasons this libel must be dismissed with costs.